275 F.3d 884 (9th Cir. 2001)
 MICHAEL BRADLEY, DBA CHEM-DRY OF CAMPBELL/SARATOGA; PATRICIA SMITH BRADLEY, DBA CHEM-DRY OF CAMPBELL/SARATOGA, PLAINTIFFS-APPELLEES,
v.
HARRIS RESEARCH, INC., A UTAH CORPORATION, DEFENDANT-APPELLANT.
 No. 00-16021
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted November 7, 2001
Filed Dec. 28, 2001
 
 Timothy C. Houpt, Salt Lake City, Utah, for the defendant-appellant.
 John C. Gorman, San Jose, California, for the plaintiffs-appellees.
 Eric H. Karp, Boston, Massachusetts, for amicus curiae American Franchisee Association.
 Appeal from the United States District Court for the Northern District of California James Ware, District Judge, Presiding D.C. No. CV 98-21019 JW
 Before: John T. Noonan, Michael Daly Hawkins, and A. Wallace Tashima, Circuit Judges.
 TASHIMA, Circuit Judge:
 
 
 1
 Harris Research, Inc. ("HRI") appeals an order of the district court denying its motion for summary judgment, dismissing the case, and ordering the parties to participate in private arbitration. A franchise agreement between HRI and Appellees Michael and Patricia Bradley provided for arbitration of disputes to take place in Utah. HRI contends that the Federal Arbitration Act ("FAA" or "Act") preempts Cal. Bus. & Prof. Code §§ 20040.5, the California statute on which the district court relied to compel arbitration in California, rather than in Utah. We have jurisdiction pursuant to 28 U.S.C.§§ 1291. See Interactive Flight Techs., Inc. v. Swissair Swiss Air Transp. Co., 249 F.3d 1177, 1179 (9th Cir. 2001) (concluding that an order of dismissal compelling arbitration was a final judgment). We conclude that the FAA preempts §§ 20040.5; accordingly, we reverse and remand.
 
 BACKGROUND
 
 2
 HRI is a Utah corporation that franchises Chem-Dry carpet cleaning franchises. In June 1983, the Bradleys acquired two Chem-Dry franchises and executed two Franchise License Agreements in connection therewith ("1983 Agreements"). Each of the 1983 Agreements provided that, "[f]ollowing the initial five (5) year period, this agreement shall be automatically renewed for additional consecutive five (5) year periods on subsequent five (5) year anniversary dates without any renewal fees being paid by FRANCHISEE. FRANCHISEE will, however, be required to sign a then current Franchise Agreement." On May 6, 1988, the parties extended the 1983 Agreements to June 1998, pursuant to a settlement agreement in a lawsuit brought by the Bradleys against HRI.
 
 
 3
 On January 30, 1998, HRI sent the Bradleys two identical letters (one per franchise) notifying them of HRI's"intent to allow renewal" of the franchises for additional five-year terms, provided that the Bradleys sign current franchise agreements and other paperwork and return them by July 20, 1998. HRI asked that the Bradleys respond in writing by March 3, 1998, and further provided that the contract date had been extended from June 9, 1998, to August 3, 1998, in order to allow the Bradleys sufficient time to review the paperwork.
 
 
 4
 On April 22, 1998, HRI sent the Bradleys another letter, stating, "[b]ecause you failed to respond by March 3, we can only assume that you have elected to not renew each of the above referenced franchises." HRI therefore stated that, as of August 3, 1998, the two franchises were to be considered "non-renewed" and would no longer be in effect.
 
 
 5
 On July 16, 1998, the Bradleys' attorney sent HRI a letter stating that the 1983 Agreements had been "automatically renewed pursuant to their original terms," citing Cal. Bus. & Prof. Code §§ 20025.[1] In case it were later determined, however, that the Bradleys were mistaken, they enclosed franchise renewal documents that they had "signed and returned to HRI conditionally and under protest," in order to protect their business rights, but without waiver of their right to challenge the validity of the agreements ("1998 Agreements"). The 1998 Agreements contained an arbitration clause requiring disputes to be submitted to arbitration in Salt Lake City, Utah, and providing that all arbitration matters were to be governed by the FAA.[2] The letter further expressed the Bradleys' view that the contracts were "contracts of adhesion and lack[ed] mutuality."
 
 
 6
 On July 29, 1998, HRI sent the Bradleys' attorney a letter setting forth its position, pointing out that the 1983 Agreements required the Bradleys to sign new franchise agreements if they wished to renew the franchises. HRI asserted that its January 30, 1998, letter constituted the notice required by Cal. Bus. & Prof. Code §§ 20025, and that the franchises were not renewed because of the Bradleys' failure to execute the 1998 Agreements unconditionally and to execute a Release Agreement and a Velda Equipment Agreement. Nonetheless, HRI offered the Bradleys another 30-day period within which to execute the required documents, "without condition, qualification or protest."
 
 
 7
 On July 30, 1998, HRI sent the Bradleys new sets of renewal documents, including copies of the 1998 Agreements. HRI informed the Bradleys that, in order to renew their franchises, they needed to execute the documents by September 4, 1998, in accordance with the terms of the July 29 letter, unaccompanied by "any conditions, qualifications or protests that could impact in any way the creation of binding agreements."
 
 
 8
 The Bradleys did not execute the new documents, instead filing this suit against HRI, on July 31, 1998. The Bradleys contended that they were entitled to continue operating their franchises under the 1983 Agreements and sought a declaration of their right to do so. They further sought a determination of the enforceability of the 1998 Agreements, contending not only that they were adhesion contracts, but that they violated Cal. Bus. & Prof. Code §§ 20040.5 by requiring disputes to be resolved outside California. The Bradleys also alleged that the 1983 and the 1998 Agreements violated Cal. Bus. & Prof. Code §§ 16600,[3] and that HRI engaged in unfair business practices. HRI moved for summary judgment on the first claim--the Bradleys' rights under the 1983 Agreements. HRI sought a declaration that the franchises were not validly renewed upon the expiration of the 1983 Agreements, or, in the alternative, that the Bradleys renewed their franchises under the terms of the 1998 Agreements and hence were required to arbitrate all claims raised in the lawsuit pursuant to the arbitration provision in the 1998 Agreements.
 
 
 9
 The district court rejected the Bradleys' argument that they were entitled to "automatically renew" the 1983 Agreements without signing new franchise agreements, pointing to ¶¶ III of the 1983 Agreements, which explicitly stated that the franchisee was required to sign "a then current Franchise Agreement" in order to renew. The court then addressed HRI's contention that it was entitled to terminate the 1983 Agreements under Cal. Bus. & Prof. Code §§ 20025(f), which permits a franchisor to refuse to renew if it provides 180 days prior written notice and the parties fail to agree to changes or additions to the franchise agreement. The court concluded that HRI had given the requisite statutory notice of intent not to renew, but that the Bradleys did not "fail to agree" to the terms of the 1998 Agreements. The court reasoned that the Bradleys' execution of the 1998 Agreements evidenced their intent to be bound by the agreement, and that by signing "under protest," they intended only "to preserve their ability to challenge the legality of certain provisions of the agreements."
 
 
 10
 Because the Bradleys executed the 1998 Agreements, they were bound by all of its provisions, including the arbitration clause. The court, however, concluded that the arbitration clause was enforceable only if the arbitration was conducted in California, citing Cal. Bus. & Prof. Code §§ 20040.5.[4] The court therefore denied HRI's motion for summary judgment, ordered the parties to participate in arbitration in California, and dismissed the case.
 
 STANDARD OF REVIEW
 
 11
 The district court's order compelling arbitration is subject to de novo review. Harden v. Roadway Package Sys., Inc., 249 F.3d 1137, 1140 (9th Cir. 2001). The factual findings underlying the district court's decision are reviewed for clear error. Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 936 (9th Cir. 2001).
 
 DISCUSSION
 
 12
 HRI contends that the district court erred in holding that §§ 20040.5 invalidates the 1998 Agreements' arbitration clause requiring arbitration to take place in Utah. HRI's claim is based solely on its argument that the FAA preempts the California statute and governs the 1998 Agreements.[5] The Act provides:
 
 
 13
 A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
 
 9 U.S.C. §§ 2.[6]
 
 14
 The FAA was designed " `to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate.' " Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Jr. Univ., 489 U.S. 468, 474 (1989) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219-20 (1985))."The FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." Id. at 477 (citation omitted). However, state law "may nonetheless be pre-empted to the extent that it actually conflicts with federal law--that is, to the extent that it `stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id. (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). Thus, a provision of the California Franchise Investment law that "invalidate[d] certain arbitration agreements covered by the [FAA]" violated the Supremacy Clause because it frustrated congressional intent to place arbitration agreements on "the same footing as other contracts." Southland Corp. v. Keating, 465 U.S. 1, 3, 15-16 (1984) (internal quotation marks omitted). On the other hand, in Volt, the Court held that a provision of the California Arbitration Act was not preempted by the FAA because it did not undermine the FAA's "primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms," and its application merely permitted the courts to "give effect to the contractual rights and expectations of the parties. " Volt, 489 U.S. at 479. The Court reasoned that the purpose of the FAA was not to "confer a right to compel arbitration of any dispute at any time," but rather to allow arbitration to" `proceed in the manner provided for in [the parties'] agreement.' " Id. at 474-75 (quoting 9 U.S.C. §§ 4) (alteration in original).
 
 
 15
 The Court again addressed the FAA's preemption of a state statute in Doctor's Assocs., Inc. v. Casarotto , 517 U.S. 681 (1996), in which it examined a Montana statute that declared an arbitration clause to be unenforceable unless notice of the arbitration clause was typed in underlined capital letters on the first page of the contract. The Court focused its attention on language in the FAA that provides that written arbitration agreements "shall be valid irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §§ 2 (emphasis added). Reasoning that the Act "declares that state law may be applied `if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally,' " the Court held that "generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening " the FAA, but that state laws applicable only to arbitration provisions may not. 517 U.S. at 686-87 (quoting Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987)) (other citations omitted). Because the Montana statute at issue imposed on arbitration agreements a special requirement "not applicable to contracts generally," it was preempted by the FAA. Id. at 687.
 
 
 16
 Section 20040.5 is part of the California Franchise Relations Act, and it provides that "[a] provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." The Bradleys contend that§§ 20040.5 is not preempted by the FAA because it treats arbitration and litigation equally and does not single out arbitration as a disfavored form of dispute resolution.
 
 
 17
 It is possible to construe the Supreme Court's holding in Doctor's Assocs. as being limited to state statutes that "single out" arbitration provisions, as opposed to statutes that affect both arbitration and litigation; however, the Court's reasoning is based on the principle that only state law that addresses the enforcement of " `contracts generally' " is not preempted by the FAA. Doctor's Assocs., 517 U.S. at 686-87 (quoting Perry, 482 U.S. at 492 n.9). Perry, in turn, was based on language in the FAA stating that an agreement to arbitrate is valid, irrevocable, and enforceable, "`save upon such grounds as exist at law or in equity for the revocation of any contract.' " Perry, 482 U.S. at 492 n.9 (quoting 9 U.S.C. §§ 2). Thus, even though the statute at issue in Doctor's Assocs. addressed only contracts subject to arbitration, the reasoning of both Doctor's Assocs. and Perry, as well as the language of 9 U.S.C. §§ 2, indicate that a state law that invalidates arbitration agreements is not preempted by the FAA only if the law is "generally applicable," Doctor's Assocs., 517 U.S. at 687, or applies to "any contract," 9 U.S.C.§§ 2.
 
 
 18
 Section 20040.5 applies only to forum selection clauses and only to franchise agreements; it therefore does not apply to "any contract." We accordingly reject the Bradleys' argument and hold that §§ 20040.5 is preempted by the FAA.[7]
 
 
 19
 This holding is consistent with those of our sister circuits that have construed statutes similar to §§ 20040.5. In KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp., 184 F.3d 42 (1st Cir. 1999), the court addressed the preemption of a state statute almost exactly like section 20040.5. Section 19-28.1-14 of the Rhode Island Franchise Investment Act rendered unenforceable any provision in a franchise agreement that restricted jurisdiction or venue to a forum outside Rhode Island. The First Circuit reasoned that the statute "present[ed] an obstacle" to the FAA's purpose of requiring courts to " `enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms,' " noting that the venue in which arbitration was to be held was a term of the arbitration agreements. Id. at 50 (quoting Volt, 489 U.S. at 478). The court relied on Perry and Doctor's Assocs. in reasoning that the Rhode Island statute was not a generally applicable contract defense because it applied only to one type of provision, venue clauses, in one type of agreement, franchise agreements. Id. at 50-51. As applied to arbitration agreements, therefore, it was preempted by the FAA. Id. at 51.
 
 
 20
 The Fifth Circuit similarly relied on Doctor's Assocs. in holding that the FAA preempted a Louisiana statute that invalidated any provision in a construction contract that required a suit or arbitration proceeding to be brought outside Louisiana. OPE Int'l LP v. Chet Morrison Contractors, Inc., 258 F.3d 443, 447 (5th Cir. 2001). The court concluded that the Louisiana statute was preempted by the FAA because it conditioned the enforceability of arbitration agreements on selection of a Louisiana forum, a requirement not applicable to contracts generally. Id.; see also Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157, 163 (2d Cir. 1998) (reasoning that New Jersey caselaw invalidating a franchise agreement's forum selection clause "applie[d] to one sort of contract provision (forum selection) in only one type of contract (a franchise agreement)," and so was preempted by the FAA); cf. Mgmt. Recruiters Int'l, Inc. v. Bloor, 129 F.3d 851, 856 (6th Cir. 1997) (noting that, if the Washington statute at issue had "imposed an absolute requirement of in-state arbitration notwithstanding the parties' agreement to arbitrate in Cleveland, its validity would be in serious doubt as a result of the preemptive effect of the FAA").[8]
 
 
 21
 Relying on Laxmi Inv., LLC v. Golf USA, 193 F.3d 1095 (9th Cir. 1999), the Bradleys also contend that the delivery of a Uniform Franchise Offering Circular ("UFOC") precludes a franchisor from requiring a franchisee to engage in arbitration outside California. They argue that, because HRI delivered a UFOC to them, California franchise law, particularly §§ 20040.5, controls the parties' relationship. We reject the Bradleys' argument for several reasons.
 
 
 22
 First, although the Bradleys briefly cited Laxmi below, they did not raise the argument they now make, and no exceptional circumstances exist to warrant our exercising our discretion to address this issue for the first time on appeal. See Delange v. Dutra Constr. Co., 183 F.3d 916, 919 n.3 (9th Cir. 1999) (per curiam) (noting the court's discretion to address issues not raised below only in limited circumstances, such as when the issue is one of law and does not depend on the factual record, or the record has been fully developed). Further, the UFOC was not made a part of the record and HRI disputes that it contains the language relied on by the Bradleys to make their Laxmi argument. The argument thus depends on an undeveloped factual record, making it unsuitable for resolution for the first time on appeal. See id.
 
 
 23
 Second, and in any event, the Bradleys misconstrue the holding of Laxmi. Laxmi held that the forum selection clause in that franchise agreement was unenforceable because the parties never clearly agreed on the venue in which arbitration was to take place. 193 F.3d at 1097 ("the parties. . . never agreed to a forum outside California"). Laxmi does not stand for the proposition that a franchisor's delivery of a UFOC to a franchisee always precludes the franchisor from requiring arbitration outside California. Laxmi's holding was based on the fact that the franchisor had given the franchisee a UFOC that stated in part that the franchise agreement required binding arbitration in Oklahoma, but that the requirement "may not be enforceable under California law," a reference to §§ 20040.5. Id. at 1096. Because there was no evidence that the franchisor "ever indicated that it would insist upon an out-ofstate forum despite the contravening California law " referred to in the UFOC, and the franchisee had no reason to expect that it had agreed to an out-of-state forum, we held that there was no "meeting of the minds on the forum selection provision." Id. at 1097 (agreeing with Alphagraphics, 840 F. Supp. 708).
 
 
 24
 In both Laxmi and Alphagraphics, the courts specifically relied on statements in the UFOC provided by the franchisors that notified the franchisee that the arbitration provision might not be enforceable under state law. See id. at 1096-98 (relying on specific language in the UFOC); Alphagraphics , 840 F. Supp. at 709-11 (same). As stated above, however, the Bradleys never made HRI's UFOC part of the record. Thus, there is no evidence in the record to support the Bradleys' assertion that HRI stated in the UFOC that California law would control the parties' relationship, or that the out-of-state forum provision might be unenforceable under California law. Unlike in Laxmi and Alphagraphics, the Bradleys never argued below or on appeal that they relied on the UFOC's "promises not to enforce the forum selection clause." Alphagraphics, 840 F. Supp. at 709, discussed in Laxmi, 193 F.3d at 1097. The Bradleys' reliance on Laxmi is therefore unavailing.
 
 
 25
 Finally, the Bradleys point to the unequal bargaining power in a franchise relationship as a reason to uphold the applicability of §§ 20040.5. Although a generally applicable contract defense, such as unconscionability, can invalidate an arbitration agreement without contravening the FAA, see Doctor's Assocs., 517 U.S. at 687, the sole issue raised on this appeal is the validity of the forum selection clause in light of the preemption of §§ 20040.5 by the FAA, not the validity or enforceability of the contract as a whole.[9] Moreover, the Bradleys have not pointed to any evidence of unequal bargaining power or unconscionability, merely citing the general nature of the franchisor-franchisee relationship as evidence of unequal bargaining power. A bald assertion of inequality in bargaining power is an insufficient basis on which to find a contract provision unenforceable. Cf. Lagatree v. Luce, Forward, Hamilton & Scripps LLP, 88 Cal. Rptr. 2d 664, 678-79 (Cal. Ct. App. 1999) (stating that, even if "arbitration agreements are adhesive--i.e., . . . they were offered on a take it or leave it basis with no opportunity for bargaining," under California law, they may still be valid and enforceable, absent evidence that they are unconscionable, that is, "so one-sided as to shock the conscience") (internal quotation marks omitted).
 
 CONCLUSION
 
 26
 Cal. Bus. & Prof. Code §§ 20040.5 is not a generally applicable contract defense that applies to any contract, but only to forum selection clauses in franchise agreements. We therefore hold that, under the reasoning of Doctor's Assocs. and Perry, as well as the language of 9 U.S.C. §§ 2 itself, §§ 20040.5 is preempted by the FAA. Accordingly, the order of the district court holding that the forum selection clause of the 1998 Agreements is invalid under §§ 20040.5, and requiring the arbitration to be conducted in California is reversed and the case is remanded for further proceedings consistent with this opinion.
 
 
 27
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 The provision on which the Bradleys relied states that "[n]o franchisor may fail to renew a franchise unless such franchisor provides the franchisee at least 180 days prior written notice of its intention not to renew." Cal. Bus. & Prof. Code §§ 20025.
 
 
 [2]
 The 1983 Agreements did not contain arbitration clauses.
 
 
 [3]
 Section 16600 provides that"every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code §§ 16600.
 
 
 [4]
 The statute provides that "[a] provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." Cal. Bus. & Prof. Code §§ 20040.5.
 
 
 [5]
 HRI does not dispute the district court's finding that the parties are bound by the 1998 Agreements; hence, we do not reach this issue.
 
 
 [6]
 The parties do not dispute that the 1998 Agreements evidence a transaction involving commerce and thus come within the purview of the Act. Cf. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-76 (1995) (interpreting the language of 9 U.S.C. §§ 2 broadly in determining the reach of the Act).
 
 
 [7]
 Our holding today is not in conflict with our decision in Ticknor, where we held that the FAA did not preempt Montana law governing the unconscionability of adhesion contracts. 265 F.3d at 941-42. The doctrine of unconscionability that was at issue in Ticknor was clearly a "generally applicable contract defense" contemplated by Doctor's Assocs.; we therefore did not address the question we face here. See id. at 941.
 
 
 [8]
 Published district court cases also agree. See Alphagraphics Franchising, Inc. v. Whaler Graphics, Inc., 840 F. Supp. 708, 710 (D. Ariz. 1993) (finding a Michigan franchise statute that invalidated out-of-state arbitration provisions to be preempted by the FAA because it "placed greater restrictions on arbitration agreements than on other contracts"); Michael v. N.A.P. Consumer Elecs. Corp., 574 F. Supp. 68, 70-71 (D.P.R. 1983) (reasoning that a Puerto Rico statute requiring dealership contract controversies to be arbitrated or litigated in Puerto Rico"proscribe[d] the use of arbitration clauses only in dealership contracts" and so was preempted by the FAA).
 
 
 [9]
 Amicus American Franchisee Association urges affirmance, relying primarily on Bolter v. Superior Court, 104 Cal. Rptr. 2d 888 (Cal. Ct. App. 2001). For reasons similar to those set forth above, however-namely, that the Bradleys themselves do not make this argument, see Russian River Watershed Prot. Com. v. City of Santa Rosa, 142 F.3d 1136, 1141 & n.1 (9th Cir. 1998) ("We do not review issues raised only by an amicus curiae.")--we decline to consider amicus' argument. Moreover, the circumstances in Bolter differ significantly from this case. There, the franchisees challenged the lower court's ruling that their breach of contract action against HRI (appellant in this case) was to be arbitrated in Utah. Id. at 889-90. The state court of appeal concluded that the same arbitration provision with which we are faced in this case was unconscionable because it required arbitration to take place in Utah. Id. at 893-95. The court, however, expressly declined to address whether Cal. Bus. & Prof. Code §§ 20040.5 was preempted by the FAA, which is the sole issue before us. Id. at 892. Unlike the case at bench, in which the district court relied on §§ 20040.5 to invalidate the contractual requirement that arbitration take place in Utah, Bolter relied solely on the doctrine of unconscionability to strike the forum selection clause. See id. at 895. Thus, Bolter does not address the issue before this court, and the issue addressed in Bolter is not before us.