**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| BRIAN K. NYGAARD, DBA BKN Appraisals, Inc., DBA PDA Sacramento, DBA PDA Stockton, | No. 18-15055 |
| Plaintiff-Appellee, | D.C. No. 2:16-cv-02184-VC |
| v. | MEMORANDUM[*] |
| PROPERTY DAMAGE APPRAISERS, INC., | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted June 3, 2019
Seattle, Washington

Before: D.W. NELSON, BEA, and N.R. SMITH, Circuit Judges.

Property Damage Appraisers, Inc. appeals the district court's order denying

its motion to compel arbitration in a diversity action brought by Brian Nygaard and

BKN Appraisals, Inc. We review de novo the district court's denial of a motion to

compel arbitration. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

2017). Because the district court correctly held that, applying California contract law, there was no "meeting of the minds" regarding arbitration based on the franchise license agreements, we affirm.

"[T]he [Federal Arbitration Act (FAA)] provides that arbitration agreements are generally valid and enforceable, 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264–65 (9th Cir. 2006) (en banc). In a diversity case, we "apply ordinary state-law principles that govern the formation of contracts to decide whether an agreement to arbitrate exists" and "follow a published intermediate state court decision regarding California law unless [we] are convinced that the California Supreme Court would reject it." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283–84 (9th Cir. 2017) (citations omitted).

We are bound by the California Court of Appeal's decision in *Winter v. Window Fashions Professionals, Inc.*, 166 Cal.App.4th 943 (2008). In a case containing the same language at issue here—a venue selection clause containing the phrase "[t]his provision may not be enforceable under California law"—*Winter* invalidated an entire arbitration provision because there was no meeting of the minds. *Id.* at 950 (citing *Laxmi Investments, LLC v. Golf USA*, 193 F.3d 1095 (9th Cir. 1999)). No California court has issued a decision contrary to *Winter*. Contrary to Appellant's contentions, the court in *MKJA, Inc. v. 123 Fit Franchising, LLC*

did not reach the issue whether *Winter* was correctly decided because it found there was no jurisdiction. 191 Cal.App.4th 643, 662 (2011). Footnote 9 in that opinion describes the defendant's argument, not the court's opinion. *Id.* at 662 n.9. We are not "convinced that the California Supreme Court would reject" *Winter*; therefore, we are bound to follow it. *Norcia*, 845 F.3d at 1283.

California regulations mandate only that the language in question, "[t]his provision may not be enforceable under California law," be included in a Uniform Offering Circular. 10 Cal. Code Reg. § 310.114.1(c)(B)(v); Cal. Civ. Prac. Bus. Litig. § 23:7; Cal. Corp. Code § 31114. The offering circular is required to be provided to prospective buyers, and functions as a pre-contract disclosure. Cal. Corp. Code § 31119. In the instant case, the language was not provided to the parties in a pre-contract offering circular; rather, it was included in an addendum to the franchise agreement itself that was signed and executed on the same date as the franchise agreement. The fact that the parties included the language voluntarily, rather than as required by law, makes the case to follow *Winter* that much stronger.

Lastly, *Winter* does not violate the FAA. The FAA "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Concepcion*, 563 U.S at 339. Arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* Lack of mutual consent,

or "meeting of the minds," is a "generally applicable contract defense[]" that continues to be an important inquiry in California contract law. *See, e.g.*, *Pierson v. Helmerich & Payne Internat. Drilling Co.*, 4 Cal.App.5th 608, 630 (2016); *HM DG, Inc. v. Amini*, 219 Cal.App.4th 1100, 1109 (2013).

It is not the case that every state law ruling that "stand[s] as an obstacle to the FAA's objectives" violates *Concepcion*. *See AT&T Mobility v. Concepcion*, 563 U.S. 333, 343 (2011). *Concepcion* simply requires courts to "place arbitration agreements on an equal footing with other contracts." *Id.* at 339; *cf. Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) (finding Kentucky's "clear-statement rule" preempted by the FAA because it applied *only* to waivers of trial by jury). Here, *Winter*'s holding that a venue selection clause as to which there was no assent because of the phrase "[t]his provision may not be enforceable under California law" is not limited to arbitration agreements by the holding's text.  If *Winter* were preempted by the FAA, every court construing ambiguous language in arbitration agreements would be forced to conclude that the language favored arbitration.

**AFFIRMED.**

*Brian Nygaard v. Property Damage Appraisers, Inc.*, No. 18-15055

N.R. SMITH, Circuit Judge, dissenting:

The majority affirms the district court's denial of Property Damage Appraisers' (PDA) motion to compel arbitration on the theory that a lack of "meeting of the minds," regarding a provision about *where* to arbitrate disputes, totally eliminates the agreement *to* arbitrate disputes. Because the majority has overlooked a severability clause, sidestepped circuit precedent, and ducked under the Supreme Court's preemption cases, I cannot agree.

Section 18 of the Franchise Agreement contains a broad arbitration clause requiring the parties to submit any claims or disputes to arbitration.[1] Section 18 also requires the arbitration to be held in Fort Worth, Texas. Section 18 was thereafter supplemented by an addendum that confirms "[t]he Agreement requires binding arbitration." The supplemental language also states that "[t]he arbitration will occur at the PDA's corporate headquarters in Fort Worth, Texas . . . [t]his

---

[1] The relevant provision reads:

> With respect to any claims, controversies or disputes which are not finally resolved through mediation or as otherwise provided above, the parties agree to submit their dispute to arbitration in accordance with the commercial rules of the AAA then in effect. The arbitration shall be held in Fort Worth, Texas at PDA's corporate headquarters, before a sole arbitrator agreed to by the parties and selected from the panel of arbitrators of the AAA.

provision may not be enforceable under California law." However, the phrase beginning "[t]his provision" does not amend the general agreement to arbitrate. It refers only to the forum selection component of the addendum.[2]

Before our circuit decided (in *Bradley*, 275 F.3d at 892) that the FAA preempted the requirement to include the "may not be enforceable under California law" language, we had already confronted that same "may not be enforceable under California law" language in *Laxmi*. *See* 193 F.3d at 1097–98. In *Laxmi*, we eliminated the requirement that the parties arbitrate out-of-state (the franchise agreement provided arbitration would occur in Oklahoma), because there was no evidence that the franchisor would seek to enforce the out-of-state forum requirement. *Id.* at 1097. However, we still ordered the parties to arbitrate. In other words, we enforced the arbitration provision despite no "meeting of the minds" on the out-of-state venue provision. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1291 (9th Cir. 2006) (en banc) ("The salient point is that, just as in

---

[2] The majority believes that the language "[t]his provision may not be enforceable under California law" is a reference to California regulations requiring such language to be included in a Uniform Offering Circular, Maj. Op. 3, despite the fact that a separate California law required this provision in franchise *agreements*. *See* Cal. Bus. & Prof. Code section 20040.5; *Laxmi Invs., LLC v. Golf USA*, 193 F.3d 1095, 1097–98 (9th Cir. 1999). The trouble with the majority's belief: our circuit has since held that the Federal Arbitration Act (FAA) preempts Cal. Bus. & Prof. Code section 20040.5. *See Bradley v. Harris Research, Inc.*, 275 F.3d 884, 892 (9th Cir. 2001).

*Laxmi*, 'there is no evidence that [MailCoups] ever indicated that it would insist upon an out-of-state forum despite the contravening California law' in place at the time the contract was executed." (alteration in original) (quoting *Laxmi*, 193 F.3d at 1097)); *Bradley*, 275 F.3d at 891 (emphasizing that in *Laxmi*, "the forum selection clause in that franchise agreement was unenforceable because the parties never clearly agreed on the venue in which arbitration was to take place").

After our circuit held the FAA preempted the California law requiring the "may not be enforceable under California law" language, a California appellate court decided *Winter v. Window Fashions Professionals, Inc.*, 83 Cal. Rptr. 3d 89 (Cal. Ct. App. 2008). Generally, we would follow *Winter*, because it is "a published intermediate state court decision regarding California law"—that is, "unless we are convinced that the California Supreme Court would reject it." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017) (internal quotation marks and citations omitted). The California Supreme Court will see *Winter* for what it is: a preempted misapplication of *Laxmi*.[3]

Contrary to the majority's argument, that the case for following *Winter* is stronger because the "may not be enforceable language" was included voluntarily

_____

[3] A different California court of appeals already characterized *Winter* as "wrongly decided." *MKJA, Inc. v. 123 Fit Franchising, LLC*, 119 Cal. Rptr. 3d 634, 647 n.9 (Cal. Ct. App. 2011).

in the addendum (rather than being required by state law in to appear in the pre-contract offering circular), the fact that the parties *voluntarily* included the language suggests there *was* a meeting of the minds. *See* Maj. Op. 3.

Furthermore, *Winter* relies exclusively on *Laxmi*, yet does not explain why it extends *Laxmi*—which ordered arbitration, just without the forum selection provision—to invalidate the entire arbitration provision. *Winter*, 83 Cal. Rptr. 3d at 94–95. Nor does *Winter* cite to generally applicable California doctrine on "meeting of the minds" to explain how *Laxmi*'s lack of "meeting of the minds" on the forum selection provision infects the "meeting of the minds" on the agreement to arbitrate disputes. *Id.*

Finally, and perhaps most importantly, *Winter*'s application of California law on "meeting of the minds" skates into FAA preemption. *See AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011) (noting that a state law rule that "stand[s] as an obstacle to the accomplishment of the FAA's objectives" will be deemed preempted); *Bradley*, 275 F.3d at 890 (insulating from preemption only state law rules that are "generally applicable" or apply to "any contract") (citations omitted). That California law generally requires "meeting of the minds" is not enough to save *Winter* from the jaws of the Supreme Court's arbitration jurisprudence. Recall *Winter* cancelled an agreement to arbitrate just because the

4

parties had no "meeting of the minds" on *where* the arbitration would happen. *Winter* thus creates the sort of special "obstacle" for enforcing arbitration clauses that the FAA preempts. *Concepcion*, 563 U.S. at 343.

To make matters worse, the majority offers two feeble defenses that should give every reader pause: (1) "*Winter*'s holding that a venue selection clause as to which there was no assent . . . is not limited to arbitration agreements by the holding's text" and (2) a contrary holding would require every court to construe ambiguous language in favor of arbitration. Maj. Op. 4. First, the idea that the FAA only preempts state rules that explicitly single out arbitration agreements squarely contradicts modern Supreme Court jurisprudence. *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) ("The [FAA] also displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements."). Further, construing ambiguous agreements in favor of arbitration has been black-letter law for more than 35 years. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver,

5

delay, or a like defense to arbitrability.").

Even if *Winter* did require us to conclude that a lack of "meeting of the minds" on the forum selection provision negates the agreement to arbitrate altogether, the majority cannot write the severability clause out of the franchise agreement. The broadly-drafted severability clause in the Agreement requires us to consider "each portion, section, part, term and provision" of the Agreement to be severable, and "if, for any reason, any section, part, term or provision is determined to be invalid and contrary to . . . law . . . this shall not impair the operation of, or have any other effect upon, such other portions, sections, parts, terms and provisions of this Agreement as may remain otherwise intelligible." The impact of the severability provision could not be clearer: even if *Winter* requires us to excise the term providing for arbitration *in Texas*, we must preserve the parties' agreement to arbitrate their disputes. If we must perform any necessary surgery on the Agreement, the severability clause requires to use a scalpel, not a hacksaw.

6