[No. G027378. Fourth Dist., Div. Three. Mar. 9, 2001.]

FLORENCE BOLTER et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
HARRIS RESEARCH, INC., Real Party In Interest.

## COUNSEL

Pettersen & Bark and David Z. Bark for Petitioners.

No appearance for Respondent.

Mahoney, Coppenrath & Jaffe, Walter G. Coppenrath, Jr., James E. Mahoney, Jeri Dye Lynch; Jones, Waldo, Holbrook & McDonough, Timothy C. Houpt and Lewis M. Francis for Real Party in Interest.

## OPINION

**O'LEARY, J.**—Franchise owners, Florence Bolter (doing business as Bolter's Chem-Dry), Sandra Valdez (doing business as Canyon Chem-Dry), and Stephen R. Knight (doing business as Knight's Chem-Dry) filed the underlying writ petition challenging the court's ruling their breach of contract action against Harris Research, Inc., must be arbitrated in Utah. The franchisees acknowledge their franchise agreements mandate that all disputes be arbitrated in Utah, but claim the provision is unconscionable and violates Business and Professions Code section 20040.5. Finding their first contention has merit, we grant the writ relief requested.

I

Harris is the franchisor of a carpet cleaning operation known as "Chem-Dry" businesses. In the early 1980's, petitioners first purchased their Chem-Dry franchises, operating their small businesses in Orange County. Over the years, when their franchise agreements lapsed, petitioners executed renewals and sometimes new franchise agreements.

In April 1998, petitioners filed a complaint seeking damages and declaratory relief, alleging Harris breached the franchise contracts and the covenants of good faith and fair dealing. Petitioners claimed Harris continually modified the franchise agreements at every opportunity to "liberalize the

obligations of [Harris]" and "constrict the rights of the franchisees." They said Harris threatened to terminate their franchises if they refused to execute the newer agreements.

Petitioners have many complaints about franchise agreements signed within the past four years. For example, the new agreements provide that if petitioners terminate their franchises, they will be forced to surrender their customer lists and clients' telephone numbers. Petitioners say they must make their income tax returns available upon request and claim Harris enforces strict advertising restrictions contained in the agreement against petitioners but not other franchisees. Additionally, petitioners assert Harris has saturated their franchise territories, diminishing the value of their franchises. Finally, petitioners are outraged by Harris's new requirement they purchase from Harris an overpriced water extraction system called the Velda, and its expensive fixtures and attachments. When petitioners originally bought their franchises, they utilized a "carbonated method of carpet cleaning," which did not involve the bulky, heavy equipment used by carpet steam or water extraction systems.[1]

In their complaint, petitioners claimed that "at the time [Harris] commenced the wrongful conduct upon which this action is based, all [petitioners] had extant written agreements with [Harris] providing that jurisdiction would be in, and the governing law would be of, the State of California" but "some of the more recent agreements provide that the franchisee shall submit to the jurisdiction of the State of Utah in any litigation involving the contract . . . ."

In response to the suit, Harris commenced separate arbitration proceedings against each petitioner in Utah and sought removal of petitioners' lawsuit to federal court. Within a few weeks, the district court issued an order to show cause (OSC) why the claims of one petitioner, Sandra Valdez, should not be severed and dismissed to allow her the opportunity to file her claim "in the proper forum—the American Arbitration Association office in Salt Lake City, Utah." The court also asked Harris to advise the court if the other franchisees were bound by similar arbitration agreements. Harris filed a motion, asking the federal court to stay the proceedings pending arbitration.

Meanwhile, petitioners' counsel wrote to the American Arbitration Association (AAA), stating arbitration could not proceed in Utah because California's Business and Professions Code section 20040.5 declares franchise

---

[1]Petitioners explain the Chem-Dry method involved applying a chemical to the carpet, agitating "it by a light, electronic brushing, and then allow[ing] it to dry." Thereafter, the residue would simply be vacuumed away.

agreements restricting venue to a forum outside the State of California void. He suggested that the arbitrations be stayed pending the outcome of the OSC in federal court. However, 10 days later, petitioners decided to dismiss their federal action and file an identical lawsuit in state court, including an additional defendant, A.Y.S., Inc.

At the end of May 1998, an AAA officer held a telephone conference hearing to discuss petitioners' objections to the hearing locale. A few weeks later, the hearing officer sent a letter to the parties confirming the arrangements made during the conference call to select an arbitrator. He included a list of 20 arbitrators from whom the parties could choose. Petitioners' counsel immediately replied with a letter, stating his clients were "not in a position to either strike or accept any of the submitted arbitrators." He repeated his objection under Business and Professions Code section 20040.5 and reminded the hearing officer of the officer's statement "it was the practice of the AAA to have an arbitrator appointed to determine the issue of arbitrability." He noted, "While I cannot at this time prevent AAA [from] what it might do, it seems that the entire exercise would be futile: [I]f the arbitrator determines the dispute is arbitrable, I would have to file an action to enjoin any attempt at arbitration . . . [and] [i]f the arbitrator determines the matter is not arbitrable in Utah, such a finding would only serve to confirm the mandate of rather clear law from a sister state [i.e., Business and Professions Code section 20040.5]." Finally, he wrote, "I want to be *absolutely* certain that nothing is done by me or my clients which could even remotely be interpreted as some sort of consent to arbitration, or waiver of the right to invoke the above-referenced law." (Original italics.)

The following month, petitioners' counsel voiced his objections again in a letter, asserting arbitrability should be decided by the courts rather than the AAA. The AAA decided a second hearing on the matter would be held in each of the three pending arbitrations before three different appointed arbitrators. Petitioners' counsel declined to participate in the hearings. The arbitrators proceeded to hold telephone conference hearings and each issued a ruling concluding the disputes were arbitrable.

Petitioners applied for a temporary restraining order and OSC in the trial court, seeking to stay the arbitration proceedings. Harris filed a motion to stay the lawsuit pending resolution of the arbitration. Judge Francisco F. Firmat considered both motions on the same day and issued an order on March 2, 1999, denying Harris's request for a stay and granting petitioners' motion to temporarily stop the arbitrations until a hearing could be held to address the following questions: (1) Are the issues of arbitrability to be decided by the court or the AAA? (2) Have any issues been resolved by a

prior decision of the AAA, and if so, are plaintiffs bound by those decisions? (3) Are the arbitration agreements contained in contracts of adhesion, and if so, then are the provisions unconscionable or do they create undue hardship? (4) If they are unconscionable, should the court refuse to enforce the arbitration agreement?

Three months later, Judge John M. Watson granted petitioners' motion to vacate the dismissal of A.Y.S., Inc., from the action. The court also vacated the trial date and the hearing on the arbitrability issues outlined by Judge Firmat. This prompted Harris to file a motion to "(1) confirm arbitration awards re: the issue of arbitrability; (2) compel completion of arbitration; and (3) stay proceedings pending arbitration." Harris argued that the issues raised in the complaint were subject to arbitration and claimed arbitrability had been decided by the AAA arbitrators. It maintained the arbitrators' orders were subject to res judicata and that "unless a petition to correct or vacate an [arbitrator's] award has been timely filed (and that time has expired) the court must render judgment confirming the . . . arbitration orders." It further asserted that "[t]he orders of the arbitrator[s] as confirmed by the judgment of [the trial] court should put to rest all of the issues . . . raised concerning the validity or enforceability of the arbitration agreements. An arbitration award bars relitigation of matters heard or that could have been heard in the arbitration proceeding." Judge Watson decided to confirm the arbitration awards, grant the motion to compel completion of the arbitrations, and stay the trial. He set a review hearing for May 22, 2000.

Petitioners filed a writ petition seeking relief from the ruling. We issued an alternative writ of mandate directing the trial court to "hold a hearing and make an independent legal determination on the issues of arbitrability." In response, the trial court vacated the prior order confirming the arbitration rulings and set a hearing for February 2, 2000. Accordingly, we dismissed the alternative writ as moot.

At the hearing, the parties had an opportunity to briefly address the matter. The court accepted more declarations and documents but refused petitioners' request for an evidentiary hearing. The court took the matter under submission, advising the parties they would be notified if further information was needed.

On April 18, 2000, the court issued an order granting Harris's motion to compel arbitration in Utah and dismissing the case. On May 1, 2000, the court signed a document prepared by Harris containing the "findings of fact and conclusions of law" in support of the order. It included the statement, inter alia, "The arbitration provisions in the franchise agreements, even if

adhesive, are not unconscionable and do not impose an unreasonable burden on [petitioners]." Petitioners filed the underlying writ petition, and we issued an order to show cause and temporarily stayed the arbitration proceedings.

## II

We begin by noting both parties have spent a great deal of time and effort discussing the application of Business and Professions Code section 20040.5 and dispute whether it is preempted by the Federal Arbitration Act (FAA). While we recognize the preemption issue has not been resolved in California, we find the answer to this case lies in general contract law principles. Keeping in mind the values of judicial economy, we confine our analysis accordingly.

"A written provision in a contract to submit to arbitration a dispute arising out of the contract is valid, irrevocable and enforceable except on 'such grounds as exist at law or in equity for the revocation of any contract.' (9 U.S.C. § 2 [contracts subject to the FAA]; Code Civ. Proc., § 1281 [contracts governed by state arbitration law].) Accordingly, the existence of a valid agreement to arbitrate is determined by reference to state law principles regarding the formation, revocation and enforceability of contracts generally. [Citations.]" (*Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1327-1328 [83 Cal.Rptr.2d 348].)

Contrary to Harris's belief, arbitration agreements are not subject to a different standard than other contracts. As recently noted by the Supreme Court, "[U]nder both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contact." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 98 [99 Cal.Rptr.2d 745, 6 P.3d 669], fn. omitted, italics added.) It further explained, "[A]lthough we have spoken of a 'strong public policy of this state in favor of resolving disputes by arbitration' [citation], Code of Civil Procedure section 1281 makes clear that an arbitration agreement is to be rescinded on the same ground as other contracts or contract terms. In this respect, arbitration agreements are neither favored nor disfavored, but simply placed on an equal footing with other contracts." (*Id.* at pp. 126-127.)

Turning to the case at hand, we first address petitioners' argument the mandatory arbitration provisions contained in their franchise agreements were unconscionable and therefore unenforceable. The doctrine of unconscionability is a judicially created doctrine which was codified in 1979 when the Legislature enacted Civil Code section 1670.5. (*Armendariz v.*

*Foundation Health Psychcare Services, Inc, supra,* 24 Cal.4th at pp. 113-114.) That section provides in relevant part, "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract . . . ." (Civ. Code, § 1670.5, subd. (a).) While the statute does not attempt to precisely define "unconscionable," there is a large body of case law recognizing the term has "both a procedural and a substantive element, both of which must be present to render a contract unenforceable. [Citation.] The procedural element focuses on the unequal bargaining positions and hidden terms common in the context of adhesion contracts. [Citation.] While courts have defined the substantive element in various ways, it traditionally involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms. [Citation.]" (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212-1213 [78 Cal.Rptr.2d 533].)

Both elements need not be present to the same degree. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 114.) Additionally, a "claim of unconscionability often cannot be determined merely by examining the face of a contract, but will require inquiry into its [commercial] setting, purpose, and effect." (*Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 926 [216 Cal.Rptr. 345, 702 P.2d 503].)

Thus, "[u]nconscionability analysis begins with an inquiry into whether the contract is one of adhesion. [Citation.] 'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.]" (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 113.) ▮ Such was the case here: Harris made no attempt to refute petitioners' characterization of it as a "large wealthy international franchiser." And it is undisputed petitioners have limited financial means, owning small "one-man operated" Dry-Chem franchises. Petitioners were told they must agree to the new franchise terms in order to *continue* running their franchises. Only a person contemplating whether to purchase a franchise for the first time would have been in the position to reject Harris's "take it or leave it" attitude. Harris was certainly aware established franchise owners simply could not afford to dispute, much less attempt to negotiate, the place and manner arbitration was to occur. Perhaps this is why Harris did not focus on this issue below or on appeal.

When a contract is adhesive, "the court must then determine whether 'other factors are present which, . . . operate to render it [unenforceable].' [Citation.]" (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 113.) Harris maintains the court correctly determined the arbitration provisions in the franchise agreements, even if adhesive, do not impose an unreasonable burden on petitioners. Citing to *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1124 [88 Cal.Rptr.2d 664], Harris argues adhesive arbitration agreements are valid and enforceable because " ' "[t]here is nothing inherently unfair or oppressive about arbitration clauses." . . . In fact, . . . the FAA shows a strong federal policy in favor of arbitration. . . .' [Citations.]"

We acknowledge there is much authority, including the cases Harris relies upon, holding adhesive arbitration provisions are not per se unconscionable. (*Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1318 [231 Cal.Rptr. 315].) However, it is also generally recognized that "there may be arbitration provisions which do give an advantage to one party. . . . In those cases, . . . it is not the requirement of arbitration alone which makes the provision unfair but rather the place or manner in which the arbitration is to occur." (*Strotz v. Dean Witter Reynolds, Inc.* (1990) 223 Cal.App.3d 208, 216, fn. 7 [272 Cal.Rptr. 680], overruled on other grounds in *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 407 [58 Cal.Rptr.2d 875, 926 P.2d 1061].) It is those provisions, regarding "place and manner," which we take issue with here.

The agreement provides, in relevant part, as follows: All disputes regarding the franchise agreement "[s]hall be submitted for arbitration to the Salt Lake City, Utah office of the [AAA] on demand of either party. Notwithstanding the foregoing, any controversies, disputes or claims related to or based on the marks may, at [Harris's] sole election, be brought and maintained in any court of competent jurisdiction. Such arbitration proceedings shall be conducted in Salt Lake City, Utah and, except as otherwise provided in this Agreement, shall be heard by one arbitrator in accordance with the then current commercial arbitration rules of the [AAA]. . . . [¶] The arbitrator shall have the right to award or include in his or her award any relief which he or she deems proper in the circumstances, . . . [except] exemplary or punitive damages. . . . [¶] [Harris] and [franchisee] agree that all arbitration shall be conducted on an individual, not class-wide, basis and that an arbitration proceeding between [Harris] and [franchisee] shall not be consolidated with any other arbitration proceeding involving [Harris] and any other natural person, association, corporation, partnership or other entity." In addition, the agreement provided, "All matters relating to arbitration shall be

governed by the [FAA] . . . [and] this Agreement and the franchise shall be governed by the laws of the State of Utah."

In order to assess the reasonableness of Harris's "place and manner" restrictions, the respective circumstances of the parties become relevant. As explained above, Harris is a large international corporation and petitioners are small "Mom and Pop" franchisees located in California. When petitioners first purchased their Chem-Dry franchises in the early 1980's, Harris was headquartered in California, and the franchise agreement did not contain an arbitration provision. Thus, they never anticipated Harris would relocate its headquarters to Utah and mandate that all disputes be litigated there.

Under the circumstances, the "place and manner" terms are unduly oppressive: The agreement requires franchisees wishing to resolve any dispute to close down their shops, pay for airfare and accommodations in Utah, and absorb the increased costs associated in having counsel familiar with Utah law. To rub salt in the wound, the agreement provides franchisees are precluded from consolidating arbitrations to share these increased costs among themselves. And the potential to recoup expenses with a favorable verdict is limited by the restriction against exemplary or punitive damages.[2]

Because Dry-Chem franchises are by nature small businesses, it is simply not a reasonable or affordable option for franchisees to abandon their offices for any length of time to litigate a dispute several thousand miles away. As Sandra Valdez explained, "I labor hard and daily to make a living from my franchise, and I have complete responsibility, myself, for running the franchise out of my home. I attend to all the advertising, administrative and selling efforts. It is necessary for me to be home daily in order to receive calls from potential customers, schedule cleanings, and do all that must ordinarily be done in connection with such a family-run business."

Likewise, Stephen Knight, who owns three Chem-Dry franchises, stated he is "basically a one-man operation." He has several employees who do the cleaning, but he personally attends to all the administrative duties such as taking phone calls from customers and scheduling cleaning jobs. He claimed he would lose much of his business if forced to litigate the matter outside California. Florence Bolter declared she is 66 years old and solely responsible for running her franchises. She also cares for her husband who is "severely ill" and "could not get by in [her] absence."

Moreover, petitioners declared they are all suffering from severe financial hardships and could not afford to maintain their claims if forced to litigate

---

[2]It is interesting to note that not all of Harris's disputes are bound for arbitration: Harris preserved its right to pursue claims related to or based on their marks (service and trade) in court.

the matter out of state. Knight attested he is "barely able to afford [the] costs [of the suit] as it is" in California. Valdez echoed these sentiments, explaining it has "become more and more difficult to make a living" due to Harris's misconduct, which is the basis of the lawsuit. She said the franchise was purchased for $32,500, but she would "be fortunate now if we could sell it for $10,000 to $15,000." Similarly, Florence Bolter said she recently had to declare bankruptcy.

Harris's prohibition against consolidation, limitation on damages and forum selection provisions have no justification other than as a means of maximizing an advantage over the petitioners. Arguably, Harris understood those terms would effectively preclude its franchisees from ever raising any claims against it, knowing the increased costs and burden on their small businesses would be prohibitive. As aptly stated in *Armendariz,* "Arbitration was not intended for this purpose." (*Armendariz v. Foundation Health Psychcare Services, Inc., supra,* 24 Cal.4th at p. 118.)

Petitioners assert the presence of unconscionable "place and manner" provisions leads to the conclusion the arbitration agreement as a whole is unenforceable. They submit Harris's "position has always been that the parties entered into an agreement to arbitrate in the State of Utah, as opposed to an agreement to arbitrate, and a separate agreement as to venue." We disagree. It is not necessary to throw the baby out with the bath water, i.e., the unconscionable provisions can be severed and the rest of the agreement enforced.

This is a remedy contemplated by the Legislature. Civil Code section 1670.5, subdivision (a) provides that, "If the court . . . finds the contract or any clause of the contract to have been unconscionable . . . the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." The Legislative Committee comment explains, "Under this section the court, in its discretion, may refuse to enforce the contract as a whole if it is permeated by the unconscionability, or it may strike any single clause or group of clauses which are so tainted or which are contrary to the essential purpose of the agreement, or it may simply limit unconscionable clauses so as to avoid unconscionable results." (Legis. Com. com., 9 West's Ann. Civ. Code, foll. § 1670.5 (1985 ed.) p. 494.)

We find no legal ground to grant petitioners' request to strike the entire arbitration agreement. "[P]ermeation is indicated by the fact that there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." (*Armendariz v. Foundation Health*

*Psychcare Services, Inc., supra,* 24 Cal.4th at pp. 124-125.) As explained, we did not find the requirement of arbitration alone to be unduly unfair but rather the "place and manner" in which the arbitration was to occur. The unconscionable provisions contained in the agreement relating to the arbitration of all controversies, disputes or claims in Salt Lake City, Utah, are clearly severable from the remainder of the arbitration agreement. (Cf. *id.* at pp. 123-127 [court found arbitration agreement permeated by an unlawful purpose due to number of defects].) Unconscionability can be cured by striking those provisions, leaving an otherwise valid and complete agreement to submit disputes to arbitration.

Let a writ of mandate issue directing the superior court to vacate its judgment and enter a new and different order striking the provisions of the agreement mandating that all arbitrations take place in the State of Utah. This court's previously issued stay order is dissolved. Petitioners shall recover their costs on appeal.

Crosby, Acting P. J., and Bedsworth, J., concurred.

A petition for a rehearing was denied March 30, 2001, and the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied June 13, 2001. Baxter, J., did not participate therein.