[No. D045354. Fourth Dist., Div. One. Sept. 16, 2005.]

INDEPENDENT ASSOCIATION OF MAILBOX CENTER OWNERS, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
MAIL BOXES ETC., USA, INC., et al., Real Parties in Interest.

398

## Counsel

The Legal Solutions Group, Peter C. Lagarias, Robert S. Boulter; and L. Michael Hankes for Petitioners.

No appearance for Respondent.

DLA Piper Rudnick Gray Cary, Jane H. Barrett, Barry M. Heller; Morrison & Foerster and Eric M. Acker for Real Parties in Interest.

## Opinion

**HUFFMAN, J.**—Plaintiff franchise owners, both individuals and their professional association, Independent Association of Mailbox Center Owners, Inc. (IAMCO), et al. (collectively the franchisees or plaintiffs), brought a complaint raising numerous statutory and common law claims to challenge the conversion of their stores into a new format, "The UPS Store" system, created by defendant Mail Boxes Etc., USA, Inc., et al. (MBE). Following trial court rulings that their claims against MBE, their franchisor, must be arbitrated on an individual basis, and not on a classwide or group basis, the franchisees filed this writ petition challenging the denial of their consolidation motion and related rulings that declined to shift all arbitration costs to MBE and imposed a stay as to certain franchisees.[1]

The subject franchise agreements and their arbitration and/or mediation clauses fall into three main groups: Those governed by the rules of the American Arbitration Association (AAA, covering 17 of the petitioners); those governed by the rules of JAMS (Judicial Arbitration and Mediation Services, covering 11 petitioners); and those governed by mediation clauses rather than any arbitration provisions (seven petitioners, referred to here as

---

[1] The franchisees are represented here by their professional association and the numerous individual and entity plaintiffs, John Boyd and Extending Enterprises, Inc., et al. Real party in interest MBE and its numerous corporate and individual affiliates are also named as defendants herein. We need not list these various parties separately by name, as only common legal issues are raised here.

the "mediation franchisees"). The professional association, IAMCO, has no independent agreement with MBE, but instead is a representative plaintiff here.

As acknowledged by the 11 JAMS franchisees, their franchise agreements contain an arbitration agreement which has a clause forbidding classwide arbitration. All franchisees claim this provision is unconscionable and unenforceable against the JAMS group, as well as the AAA and mediation franchisees. Their petition challenges several trial court orders: (1) Granting MBE's petition to compel arbitration; (2) denying the franchisees' motion to consolidate the arbitrations pursuant to Code of Civil Procedure section 1281.3;[2] (3) staying this action as to the mediation franchisees whose franchise agreements do not contain arbitration clauses, and IAMCO; and (4) denying or referring to the arbitrator the requested ruling on fee shifting, that would require MBE to bear the costs of arbitrating the franchisees' unwaivable statutory claims. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).)

The issue of the validity of a provision in an arbitration agreement forbidding classwide arbitration has very recently been addressed by our Supreme Court in *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 152 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*), in a factual context dealing with consumer credit card agreements, and under the theory of unconscionability. We will discuss and apply this authority and related recent authorities in this comparable factual context, dealing with different arbitration and mediation clauses in different franchise agreements, and the franchisees' request for consolidated arbitration proceedings.

As will be explained, the petition will be denied in part, to uphold the trial court's basic order that compelled arbitration. However, we will grant the petition in part, to order the trial court (1) to vacate its order denying the consolidation request and instead to grant a different order as directed, to strike certain unconscionable portions of the arbitration clauses; and (2) to lift the stay of the action as to the mediation franchisees and IAMCO, who were not subject to arbitration; and (3) to vacate the order that referred to the arbitrator all fee-shifting issues regarding the statutory claims raised, and to hold appropriate further proceedings on fees allocation.

---

[2] All further statutory references are to the Code of Civil Procedure unless noted.

## FACTUAL AND PROCEDURAL BACKGROUND

### A

### Franchise Agreements and Arbitration Provisions

Franchisees own and operate postal supply and office services businesses under franchises issued by MBE, which has recently been acquired by United Parcel Service (UPS). Each of the franchisees signed a franchise agreement with MBE allowing them to use the MBE trade names and trademarks. In general, the AAA versions of the arbitration clause include provisions stating that the parties agreed to submit "every claim or dispute arising out of or relating to the negotiation, performance, or non-performance of this Agreement" to arbitration. Further, some AAA agreements provide, "any monetary controversy or claim arising out of or relating to this Agreement or the breach thereof may by mutual agreement be settled by arbitration . . . Any non-monetary disputes shall be submitted to and settled by binding arbitration."

In the JAMS versions, the "Resolution of Disputes" clause typically provides for arbitration of "every controversy, claim or dispute arising out of or in connection with the negotiation, performance or non-performance of this Agreement, including, without limitation, any alleged torts and/or claims regarding the validity, scope, and enforceability of this Section . . . ."

Both types of arbitration clauses contain a choice of laws provision stating that the agreements shall be construed under and be governed by California law.

In the AAA version of the arbitration clause, MBE reserved for itself the right to proceed in court to seek appropriate remedies such as damages, injunctive relief, or foreclosure. However, the franchisees were restricted to arbitration to resolve any claim or dispute arising out of the agreement, including torts or the validity of the arbitration clause. Similarly, the JAMS versions also provide for MBE to have access to the courts, while franchisees are referred to arbitration proceedings.

In contrast, in the seven franchise agreements that require mediation and do not include an arbitration clause, the parties agreed, "before either party may initiate any suit or action against the other, the parties pledge to attempt first to resolve the controversy or claim arising out of or relating to the Franchise Agreement ('Dispute') pursuant to mediation."

These franchise agreements contained two basic versions of the arbitration clauses at issue here, regarding the number of participants in the arbitration.

In the JAMS version, it includes a ban on group or class actions, stating: "It is the intent of the parties that any arbitration between MBE and Franchisee shall be limited to the individual claims of either party and that no claim of any other party shall be subject to arbitration in such proceeding on any basis whatsoever, whether by consolidation, by class or representative principles, or otherwise."

The AAA version does not include any such reference to group or class arbitration proceedings. It generally refers to "the parties" as being bound to attempt to resolve the matter through good faith efforts, with an arbitration demand to follow if "the parties" were unable to resolve the dispute.

In these writ proceedings, the parties also dispute the validity of the AAA arbitration agreement that provides, in pertinent part, "the arbitrator shall have no power or authority to award punitive, consequential or incidental damages." The JAMS provision has a similar limitation on available remedies, to restrict the arbitrator from awarding punitive damages, lost wages and/or profits, attorney's fees and/or costs, and also specifies that, "in no event shall any monetary damages be recovered by a franchisee in excess of the amount of the franchise fee and the costs of building out the MBE Center."

B

Complaint; MBE's Motion to Compel; Franchisees' Request
for Fees Order

After UPS acquired MBE, these franchisees filed their complaint in July 2003 to challenge MBE's business practices, regarding the change of its franchise system from "Mail Boxes Etc." to "The UPS Store" system. Plaintiffs alleged that this conduct violated (1) Corporations Code section 31000 et seq. (the California Franchise Investment Law); (2) section 16700 et seq. of the Business and Professions Code (the Cartwright Act); (3) Civil Code section 3426 et seq. (the Uniform Trade Secrets Act); and (4) section 17200 et seq. of the Business and Professions Code (the unfair competition law). Plaintiffs further alleged common law claims for breach of contract, interference with contractual rights and prospective economic advantage, and defamation. The relief sought included compensatory and punitive damages, injunctive relief regarding unfair trade practices, and statutory relief for restitution, disgorgement of illegal gains, and statutory penalties under the unfair competition law.

In August 2003, MBE moved to compel arbitration pursuant to the arbitration clauses in the AAA and JAMS-type franchise agreements. In their

opposition and in supplemental briefing permitted by the trial court, franchisees sought a ruling to order fee shifting to require MBE to bear the costs of arbitrating franchisees' statutory claims (relying on *Armendariz, supra,* 24 Cal.4th 83).

After oral argument, the trial court confirmed its ruling of November 10, 2003, granting the MBE petition to compel arbitration and staying this action, "for 180 days so that the arbitrations and mediations may be completed. This action is stayed to avoid the possibility of inconsistent findings on common issues of law and fact." The trial court found, with regard to the stay: "The fact that some of the defendants are not-signatories [*sic*] to the franchise agreements does not preclude arbitration and/or mediation. Plaintiffs' claims against the non-signatory defendants arise from the franchise agreements and are intertwined with the arbitrable and mediation claims against the signatory defendants."[3]

The ruling on the motion to compel further found that the arbitration and mediation clauses were not procedurally or substantively unconscionable: "In that respect, there is no evidence that the plaintiffs unsuccessfully attempted to negotiate the arbitration and mediation terms of the franchise agreements; there is no evidence that the franchise agreements were difficult to read; there is no showing that the plaintiffs lacked sophistication such that they did not understand the terms of the franchise agreements; there is no showing that the plaintiffs lacked comparable business opportunities; and there is no showing that plaintiffs' financial circumstances make[s] it impossible for them to afford arbitration or mediation of their claims."

The combined rulings on the motion to compel further included the trial court's statement that it declined to allocate the costs of arbitration, and instead referred that matter to the arbitrators.

## C

### Proceedings in Arbitration; Franchisees' Motion to Consolidate

Following the court order to arbitrate, franchisees filed two group arbitration claims in early February of 2004, one with the AAA (17 franchisees) and one with JAMS (11). After MBE objected, the AAA decided as an AAA administrative matter that it would not proceed with a group arbitration

---

[3] The remaining mediation franchisees plus IAMCO, who have no arbitration clauses in their franchise agreements, were subject initially to a six-month stay, but the stay was extended for another six months by the trial court.

demand and did not appoint an arbitrator to decide the group issue. The AAA cited its Commercial Arbitration Rule R-1 (which does not expressly address group arbitration procedures).[4]

In the JAMS group of 11 franchisees, JAMS appointed an arbitrator, Retired Judge G. Keith Wisot, to decide the group issue. However, he declined to administer a group arbitration, on the basis that the JAMS arbitration clause expressly barred group or class arbitration.

Following these denials of the group arbitration requests, franchisees filed their motion to consolidate arbitrations under section 1281.3. They made a statutory showing that there were separate arbitration agreements, these disputes arose from the same facts or series of related transactions, and there were common issues of law or fact. Franchisees argued, inter alia, that the ban on classwide arbitration was unconscionable because it would lead to costly and duplicative proceedings that they could not afford, and because the available relief prescribed under the clause was unduly limited.

In MBE's opposition, it argued that such consolidation would deprive MBE of certain vested contractual rights, such as the JAMS contractual bar on classwide arbitration. The MBE opposition also stated, "In fact, if the Court has any inclination to consolidate any of the arbitration actions, Defendants withdraw any request for arbitration and ask that consolidation occur only in court. Defendants would never have exercised their right to seek arbitration of the arbitrable claims if they had believed that consolidation in arbitration—without any effective right to appeal—would occur." The motion to consolidate was denied, with the trial court explaining only that "Defendants' opposition is dispositive."

This petition followed, alleging the remedy of appeal was inadequate.

---

[4] AAA Commercial Arbitration Rule R-1, "Agreement of Parties," provides in pertinent part: "(a) The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] under its Commercial Arbitration Rules . . . [¶] (b) Unless the parties or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest and arbitration fees and costs. Parties may also agree to use these procedures in larger cases. *Unless the parties agree otherwise, these procedures will not apply in cases involving more than two parties.* . . . [¶] (c) Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes shall apply to all cases in which the disclosed claim or counterclaim of any party is at least $500,000, exclusive of claimed interest, arbitration fees and costs. Parties may also agree to use the Procedures in cases involving claims or counterclaims under $500,000, or in nonmonetary cases. . . ." (<http://www.adr.org> [as of Sept. 16, 2005], italics added.) It is not clear if subdivision (b) applies here, since the complaint seeks extensive monetary and injunctive relief (over $470,000 lost investment, etc.).

DISCUSSION

I

ISSUES PRESENTED

██ Franchisees' petition for a writ of mandate seeks review of the trial court orders on an expedited basis, because the essential facts are undisputed, the subject order could unduly limit the scope of the arbitration proceedings under a potentially unconscionable "no class action" provision, and the issue could otherwise effectively evade appellate review. (*Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1098 [118 Cal.Rptr.2d 862].) We agree with franchisees that review of the subject trial court orders is appropriate at this point. Where the material facts are not in dispute, an appellate court may decide the enforceability of an arbitration clause de novo. (*NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71 [100 Cal.Rptr.2d 683].) One important public policy reason for allowing class actions is to promote judicial economy and streamline the litigation process in appropriate cases, involving common issues of law and fact, and this policy is also evidently promoted through an arbitration forum. (*Szetela, supra,* 97 Cal.App.4th at pp. 1101–1102.) To allow appropriate consideration to these policies, we have issued an order to show cause, obtained further briefing on the *Discover Bank* authority (*Discover Bank, supra,* 36 Cal.4th 148), and heard oral argument.[5] Under these unusual circumstances, writ relief is proper. (*Atlas Plastering, Inc. v. Superior Court* (1977) 72 Cal.App.3d 63, 68 [140 Cal.Rptr. 59].)

We first outline the scope of the issues presented and our approach to them. Initially, we take note that MBE's petition to compel arbitration was granted in December 2003, but this petition for writ relief was filed almost a year later, after the franchisees' consolidation requests were denied. Although the franchisees nominally seek to have the motion to compel arbitration order vacated, they admit that they have significantly complied with it by initiating and pursuing arbitration proceedings, and that the orders to compel and denying their fee-shifting request did not become entirely objectionable to them until their consolidation request was denied. Accordingly, their true focus is now upon (1) the trial court's denial of the motion to consolidate the arbitrations, in view of the different arbitration provisions involved, and the trial court's rejection of their unconscionability arguments, (2) the stay of

---

[5] Supplemental briefing was also obtained on the effect of recent case law in *Parrish v. Cingular Wireless, LLC* (2005) 129 Cal.App.4th 601 [28 Cal.Rptr.3d 802], review granted August 24, 2005, S135072. However, since the Supreme Court has granted review of that matter, we accordingly do not discuss it further.

action ordered for those mediation franchisees not subject to arbitration, and finally, (3) the unsuccessful request they made in opposition to the motion to compel, to achieve a ruling on fee shifting, to vindicate their unwaivable statutory claims. (§ 1281.3; *Armendariz, supra,* 24 Cal.4th at pp. 113–114.)

Under these circumstances, we decline to disturb the underlying order granting the petitions to compel arbitration as to the AAA and JAMS group, as it is well grounded in the record and in applicable law. However, we will next consider the requests for writ relief regarding consolidation, and regarding the other portions of the arbitration agreement that are challenged here as unconscionable (the limitation on available remedies and the one-sided availability of court relief to the franchisor only). We then address the trial court's stay of the mediation franchisees' claims, and its referral to the arbitrator of the request for fee shifting of the statutory claims, as outlined above.

II

UNCONSCIONABILITY ISSUES: CONSOLIDATION
AND LIMITATIONS ON REMEDIES

A

Applicable Standards: Unconscionability

■ Before we can address franchisees' arguments these mandatory arbitration provisions contained in their franchise agreements were unconscionable in these respects and therefore unenforceable, we must clarify our terms and set forth the applicable standards on the respective roles of the trial court and the arbitrator in enforcing the terms of the arbitration clause, where issues of unconscionability are raised. In general, it is left to an arbitrator to construe the meaning and extent of the arbitration agreement between the parties. (6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 512, pp. 950–952.) However, it is for the courts to decide questions of arbitrability, which include whether the parties are bound by a given arbitration clause, or whether it is unenforceable as unconscionable. (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2004) § 5:362.3, p. 5-183, citing *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444 [156 L.Ed.2d 414, 123 S.Ct. 2402] (*Bazzle*).) A trial court determination of the validity of an agreement to arbitrate will be reviewed de novo on appeal, where there was no conflict in the extrinsic evidence provided to the trial court. (Eisenberg et al., Cal. Practice Guide, Civil Appeals and Writs (The Rutter Group 2004) § 8:129.3, p. 8-74, citing *CPI Builders, Inc. v. Impco Technologies, Inc.* (2001) 94 Cal.App.4th 1167, 1171–1172 [114 Cal.Rptr.2d 851].)

■ "The doctrine of unconscionability is a judicially created doctrine which was codified in 1979 when the Legislature enacted Civil Code section 1670.5. [Citation.] . . . While the statute does not attempt to precisely define 'unconscionable,' there is a large body of case law recognizing the term has 'both a procedural and a substantive element, both of which must be present to render a contract unenforceable. [Citation.] The procedural element focuses on the unequal bargaining positions and hidden terms common in the context of adhesion contracts. [Citation.] While courts have defined the substantive element in various ways, it traditionally involves contract terms that are so one-sided as to "shock the conscience," or that impose harsh or oppressive terms. [Citation.]' [Citation.]" (*Bolter v. Superior Court* (2001) 87 Cal.App.4th 900, 906–907 [104 Cal.Rptr.2d 888] (*Bolter*).)[6]

■ Case law has recognized that franchise agreements can have some characteristics of contracts of adhesion. (*Postal Instant Press, Inc. v. Sealy* (1996) 43 Cal.App.4th 1704, 1716–1718 [51 Cal.Rptr.2d 365].) There is a clear disparity in the bargaining power of franchisors versus franchisees. (*Ibid.*) The Supreme Court recognized that fact in *Keating v. Superior Court* (1982) 31 Cal.3d 584, 613–614 [183 Cal.Rptr. 360, 645 P.2d 1192] (*Keating*) (overruled on other grounds in *Southland Corp. v. Keating* (1984) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852]), which arose out of a dispute over franchise agreements. (*Discover Bank, supra,* 36 Cal.4th at p. 157.) " ' "The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." [Citation.]' " (*Bolter, supra,* 87 Cal.App.4th 900, 907, citing *Armendariz, supra,* 24 Cal.4th at p. 113.) "Additionally, a 'claim of unconscionability often cannot be determined merely by examining the face of a contract, but will require inquiry into its [commercial] setting, purpose, and effect.' [Citation.]" (*Bolter, supra,* at p. 907.) Franchise agreements are not per se unenforceable, but their provisions can be examined to see if the characteristics of unconscionability are present in part or in whole. (*Bolter, supra,* at pp. 907–909, citing Civ. Code, § 1670.5, subd. (a).)

■ As set forth by the Supreme Court in *Discover Bank,* it is well-established in both federal and state law dealing with arbitration that "courts should be left to decide certain 'gateway matters' (*Bazzle, supra,* 539 U.S. at p. 452 (plur. opn. of Breyer, J.)) or 'fundamental' matters such as the validity and scope of the arbitration agreement ([539 U.S.] at pp. 456–457 (dis. opn.

---

[6] "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra,* 24 Cal.4th at p. 114.) Here, although franchisees claim the arbitration provision is *procedurally* unconscionable merely because it is found in an adhesive franchise agreement, it cannot support that argument. Rather, the actual issue presented is whether the challenged provisions are *substantively* unconscionable.

of Rehnquist, C. J.)). *Under California law, the question whether 'grounds exist for the revocation of the [arbitration] agreement' (Code Civ. Proc., § 1281.2) based on 'grounds as exist for the revocation of any contract' ([i]d., § 1281) is for the courts to decide, not an arbitrator.* [Citations.] This includes the determination of whether arbitration agreements or portions thereof are deemed to be unconscionable or contrary to public policy. [Citations.]" (*Discover Bank, supra,* 36 Cal.4th at p. 171, italics added.)

However, also as clarified in *Discover Bank, supra,* 36 Cal.4th 148, the United States Supreme Court did not address in *Bazzle, supra,* 539 U.S. 444, the question of whether a decision about the propriety of classwide arbitration should have been made by a court or an arbitrator (under an agreement silent on the subject). The United States Supreme Court did not have to do so because the state court system in that case had made that decision to allow it, which was correct, such that even if that decision should properly have been left to the arbitrator, there was no use in sending it back for redetermination. (*Id.* at pp. 455–456 (conc. & dis. opn. of Stevens, J.), as cited in *Discover Bank, supra,* 36 Cal.4th at p. 170.)

*Discover Bank* further held, "Under California law, as discussed, class arbitration may be authorized, even when a contract of adhesion forbids it, because a class arbitration waiver may be unconscionable. *Bazzle* does not call into question the principle that state courts may enforce general contract rules regarding unconscionability and public policy that preclude class action waivers." (*Discover Bank, supra,* 36 Cal.4th at p. 171.)

Under these authorities, we believe that the franchisees' requests regarding the JAMS agreement's ban on consolidation, and regarding the other significant portions of the arbitration agreement (the limitation on available remedies and the one-sided availability of court relief to the franchisor only) should properly be considered to be the type of gateway matters that have to do with the validity and binding nature of the given arbitration clauses, under the theory of unconscionability. We must determine de novo whether those rulings by the trial court were correct.

B

Ban on Group Arbitration

Section 1281.3 provides in pertinent part that a superior court "may" order consolidation of separate arbitration proceedings where: "(1) Separate arbitration agreements or proceedings exist between the same parties; or one party is a party to a separate arbitration agreement or proceeding with a third party; and (2) The disputes arise from the same transactions or series of related

transactions; and (3) There is common issue or issues of law or fact creating the possibility of conflicting rulings by more than one arbitrator or panel of arbitrators." The statute further provides for the trial court to make legal rulings and to exercise its discretion as follows: "In the event that the arbitration agreements in consolidated proceedings contain inconsistent provisions, the court shall resolve such conflicts and determine the rights and duties of the various parties to achieve substantial justice under all the circumstances. [¶] The court may exercise its discretion under this section to deny consolidation of separate arbitration proceedings or to consolidate separate arbitration proceedings only as to certain issues, leaving other issues to be resolved in separate proceedings." (§ 1281.3.)

As recognized and confirmed in *Discover Bank, supra,* 36 Cal.4th 148, classwide arbitration is well accepted under California law as workable and appropriate in some cases. (*Id.* at p. 172, citing *Keating, supra,* 31 Cal.3d 584, 614.) In *Discover Bank,* the Supreme Court applied these rules in the consumer litigation context, stating, "[U]nder some circumstances, the law in California is that class action waivers in consumer contracts of adhesion are unenforceable, whether the consumer is being asked to waive the right to class action litigation or the right to classwide arbitration." (*Discover Bank, supra,* 36 Cal.4th at p. 153.) The Supreme Court further found there was no FAA (Federal Arbitration Act, 9 U.S.C. § 1 et seq.) preemption of California law in this respect. (*Discover Bank, supra,* 36 Cal.4th at p. 153; see also *Blue Cross of California v. Superior Court* (1998) 67 Cal.App.4th 42, 62–65 [78 Cal.Rptr.2d 779] [trial court can order classwide arbitration under California law even though arbitration agreement is silent as to classwide arbitration]; see also *Garcia v. DIRECTV, Inc.* (2004) 115 Cal.App.4th 297 [9 Cal.Rptr.3d 190].)

As set out in *Discover Bank,* "when the question of whether a class action arbitration is available depends on whether or not the arbitration agreement is silent on the matter or expressly forbids class action arbitration, then it is up to the arbitrator, not the court, to determine whether the arbitration agreement is in fact silent." (*Discover Bank, supra,* 36 Cal.4th at pp. 170–171.)

This factual context involves different arbitration and mediation clauses found in different franchise agreements, with respect to the specification of the allowable number of participants in the arbitration. In particular, the JAMS version in this case includes a ban on group or class actions, stating: "It is the intent of the parties that any arbitration between MBE and Franchisee shall be limited to the individual claims of either party and that no claim of any other party shall be subject to arbitration in such proceeding on any basis whatsoever, whether by consolidation, by class or representative principles, or otherwise." In contrast, the AAA version is silent on any such issue of group or class arbitrations.

We have already mentioned that franchise agreements, in some cases, have the same qualities of adhesion contracts as do certain consumer contracts, such as were discussed in *Discover Bank, supra*, 36 Cal.4th 148, with regard to the availability of group arbitration. These franchise agreements also resemble employment agreements to the extent that the franchisees' livelihoods are involved and subject to contractual arbitration for dispute resolution, although those clauses are not statutory in nature. Here, the trial court flatly rejected the unconscionability argument, stating: "In that respect, there is no evidence that the plaintiffs unsuccessfully attempted to negotiate the arbitration and mediation terms of the franchise agreements; there is no evidence that the franchise agreements were difficult to read; there is no showing that the plaintiffs lacked sophistication such that they did not understand the terms of the franchise agreements; there is no showing that the plaintiffs lacked comparable business opportunities . . . ." However, these findings beg the question of whether the nature of these franchise agreements and the business relationship between the parties fell within accepted criteria for adhesion contracts, particularly as to this prohibition in one of the clauses of group arbitration (JAMS), and its broad application to the other groups (AAA and mediation franchisees). We find the trial court's ruling substantively incorrect because it disregarded applicable law concerning adhesion contracts in the franchise situation, where broad statutory arguments implicating the public interest are raised.

In any case, under section 1281.3, the trial court had the duty and the discretion to resolve conflicts between any inconsistent provisions in the two sets of arbitration agreements, in order to "achieve substantial justice under all the circumstances. [¶] The court may exercise its discretion under this section to deny consolidation of separate arbitration proceedings or to consolidate separate arbitration proceedings only as to certain issues, leaving other issues to be resolved in separate proceedings." (§ 1281.3.) In this case, the trial court erred in deeming the JAMS arbitration clause to be controlling over the AAA arbitration clauses, to the extent that it banned group arbitration proceedings. The trial court also erred in essentially allowing the AAA arbitration administrative proceedings to decline to decide or issue any ruling on the group arbitration request, without at least referring the matter to an arbitrator. As a matter of interpretation of the validity of the arbitration agreement, the trial court had the duty and the discretion to construe the two agreements together and to make an appropriate order regarding consolidation.

For the reasons outlined in *Discover Bank, supra,* 36 Cal.4th 148 and *Bazzle, supra,* 539 U.S. 444, group arbitration can be a valid means of dispute resolution where the statutory and case law criteria for consolidation are satisfied. Here, the franchisees made an adequate showing under section 1281.3 that there were common issues of law and fact and that group

arbitration would be a preferred means of dispute resolution. The trial court should have accepted that showing, in light of the policies outlined in *Keating, supra,* 31 Cal.3d 584, and it was error not to strike the ban on group arbitration from the JAMS agreement on this record. We are aware that difficult questions still remain regarding separating out the common issues of law and fact, particularly the statutory claims, from the individualized common law issues regarding the contractual and tort claims, as we next discuss.

C

Limitation of Available Remedies in Arbitration

Franchisees next dispute the validity of the portions of the JAMS and AAA arbitration agreements purporting to restrict an arbitrator from having any "power or authority to award punitive, consequential, or incidental damages," (AAA version) or restricting the arbitrator from awarding punitive damages, lost wages and/or profits, attorney's fees and/or costs, and specifying that, "in no event shall any monetary damages be recovered by a franchisee in excess of the amount of the franchise fee and the cost of building out the MBE Center" (JAMS version). Additionally, franchisees make arguments that these provisions are unconscionable to the extent that they allow MBE to obtain court relief in injunction or damages, while franchisees are limited to seeking arbitration.

As alleged by the complaint, franchisees are seeking to show that MBE violated (1) Corporations Code section 31000 et seq. (the California Franchise Investment Law); (2) Business and Professions Code section 16700 et seq. (the Cartwright Act); (3) Civil Code section 3426 et seq. (the Uniform Trade Secrets Act); and (4) Business and Professions Code section 17200 et seq. (the unfair competition law). The relief sought includes compensatory and punitive damages, as authorized by statute, as well as injunctive relief regarding unfair trade practices, and other statutory relief for restitution, disgorgement of illegal gains, and statutory penalties available under the unfair competition law.

The wide-ranging nature of the claims presented in the relief sought portion of the complaint again raises the issue of whether classwide arbitration is "workable and appropriate" to resolve both the common issues, such as the statutory claims, as well as the individualized contract and tort claims. (*Discover Bank, supra,* 36 Cal.4th at p. 172.) We have already outlined above that insofar as the arbitration clause contains an unconscionable ban on group arbitration, it is not valid and enforceable. However, where, as here, the arbitration agreements are broad in terms of the scope of the questions

submitted to arbitration, the arbitrators will have the authority to make additional contract interpretations, as guided by the trial court's validity rulings, and to decide matters of arbitration procedure, according to the teaching of the United States Supreme Court in *Bazzle, supra,* 539 U.S. 444. (*Yuen v. Superior Court* (2004) 121 Cal.App.4th 1133, 1138 [18 Cal.Rptr.3d 127].) "[T]he court decides whether the matter should be referred to arbitration, but 'once a matter has been referred to arbitration, the court's involvement is strictly limited until the arbitration is completed.' [Citation.]" (*Ibid.*) Under the AAA Commercial Arbitration Rules, R-43, Scope of Award: "(a) The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract . . . ." (<http://www.adr.org> [as of Sept. 16, 2005].) This may include rulings on both statutory and contractual claims, as we next explain.

This approach is supported by the language of the California Supreme Court in *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1080 [90 Cal.Rptr.2d 334, 988 P.2d 67]. There, the court made the general observation that "the purpose of arbitration is to voluntarily resolve private disputes in an expeditious and efficient manner. [Citations.] Parties to arbitration voluntarily trade the formal procedures and the opportunity for greater discovery and appellate review for ' "the simplicity, informality, and expedition of arbitration." ' [Citation.]" (*Ibid.*) Nevertheless, it is well accepted that an arbitrator can, within the scope of the particular arbitration agreement, "resolve statutory claims as well as those purely contractual if the parties so intend, and that in doing so, the parties do not forego substantive rights, but merely agree to resolve them in a different forum. [Citations.]" (*Broughton, supra,* 21 Cal.4th 1066, 1075.)[7]

It is not within the scope of these writ proceedings to decide the availability of the substantive relief requested under these various remedial statutory schemes, including punitive or compensatory damages or other relief. However, we are able to say at this point that to the extent the arbitration clauses purport to deny the arbitrators the ability to award full relief according to the merits of the respective showings, the arbitration clauses run contrary to statute and are unduly restrictive, possibly amounting to unconscionable waivers of statutory rights. The arbitration agreements should not be interpreted as written to deprive the arbitrators of authority to award punitive, consequential, or incidental damages, such as lost wages and/or profits, or attorney's fees and/or costs, to the extent these would otherwise be available under the substantive causes of action asserted. To the extent that the

---

[7] An arbitration clause that is so one-sided as to deprive the weaker party of substantive claims, or the right to punitive damages recovery, is against public policy and unconscionable. (*Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1529–1530, 1552 [60 Cal.Rptr.2d 138].)

arbitration clauses in this respect seek to deprive plaintiffs of statutorily authorized remedies, or relief in court that would otherwise be allowable to them, they are unconscionable, and the trial court should have stricken them from the arbitration clause. The petition for writ of mandate will be granted to this extent as well.

## III

### STAY OF THE MEDIATION FRANCHISEES' CLAIMS

The mediation franchisees' agreements do not include an arbitration clause, instead providing: "Before either party may initiate any suit or action against the other, the parties pledge to attempt first to resolve the controversy or claim arising out of or relating to the Franchise Agreement ('Dispute') pursuant to mediation." The trial court's ruling stated, "The fact that some of the defendants are not signatories to the franchise agreements does not preclude arbitration and/or mediation. Plaintiffs' claims against the non-signatory defendants arise from the franchise agreements and are intertwined with the arbitrable and mediation claims against the signatory defendants." Evidently, this ruling was predicated on section 1281.4, which allows for a stay of pending actions or proceedings while arbitration is held.

In general, the trial court's discretion is invoked in deciding a request to stay or deny arbitration that is sought under section 1281.2. (*Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 101 [284 Cal.Rptr. 255]; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra,* § 8:94a, p. 8-38.)

Certainly, the trial court had a valid concern that the various franchisees and their professional association were bringing closely related claims and there could possibly be inconsistent findings on common issues of law and fact. However, the fact remains that some of these franchisees are subject to valid arbitration clauses (AAA and JAMS), even though some of the contents of the clauses must be stricken as unconscionable, as outlined above. The remainder of the franchisees (the mediation franchisees and their professional association) are entirely outside the arbitration arena, and they did not agree to arbitration. As they argued in the franchisees' opposition to the motion to compel, "In the unlikely event a few claims are somehow subject to arbitration, the court should stay those claims and allow the many court claims and parties to proceed first. After all it is defendants which created this patchwork of multiple nonsignatory parties and myriads of arbitration and mediation clauses which seek unfair and improper advantages."

According to the franchisees' petition and reply brief, MBE did not respond in a timely manner to their request to mediate, and there is an issue

remaining whether mediation will still take place in light of a contractual provision that mediation would be deemed completed 30 days after the date of the mediation notice given, unless extended by mutual consent of the parties, which has not occurred.

Whatever the current status of mediation, we conclude that the trial court abused its discretion in essentially binding the mediation franchisees to the terms of an arbitration agreement that they never signed. The same is true of the professional association, IAMCO.

In conclusion, the trial court erred in imposing the stay, and the petition will be granted to require the trial court to lift the stay order regarding the mediation petitioners and the professional association.

IV

FEE-SHIFTING REQUEST

The trial court declined to allocate the costs of arbitration, and instead referred that matter to the arbitrators. The trial court ruling included a statement that there had been no showing that plaintiffs' financial circumstances make it impossible for them to afford arbitration or mediation of their claims.

Franchisees claim this was error under *Armendariz, supra,* 24 Cal.4th 83, where the Supreme Court enforced a costs-shifting rule in arbitration, in a case in which one of the issues in arbitration was an unwaivable statutory right (under Gov. Code, § 12900 et seq., California Fair Employment and Housing Act (FEHA)). The Supreme Court reasoned, based on federal case law, that an employment-based agreement to arbitrate a statutory claim (there, a FEHA claim) amounted to an agreement by the employer "to abide by the substantive remedial provisions of the statute" and to pay "all types of costs that are unique to arbitration." (*Armendariz, supra,* at pp. 110–113, citing *Cole v. Burns Intern. Security Services* (D.C. Cir. 1997) 105 F.3d 1465 [323 U.S. App. D.C. 133].) The reason for establishing this rule was " 'to ensure minimum standards of fairness in arbitration so that employees subject to mandatory arbitration agreements can vindicate their public rights in an arbitral forum.' " (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 506–507 [30 Cal.Rptr.3d 787, 115 P.3d 68] (*Boghos*).) Therefore, an employee cannot be required to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to a forum of mandatory arbitration. (*Armendariz, supra,* at p. 102.)

In *Boghos, supra,* 36 Cal.4th at pages 507–508, the Supreme Court recently clarified that case law has not extended the *Armendariz* cost-shifting

rule to common law claims generally, and explained: "The rule is a judicially created exception to Code of Civil Procedure section 1284.2, which provides that the parties to an arbitration agreement do share costs '[u]nless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree . . . .' " (*Ibid.*) The court emphasized that this rule has only limited application, because the only claims subject to it are those which are "carefully tethered to statutory or constitutional provisions [citation]." (*Id.* at p. 508.)

 Therefore, to qualify as a claim in arbitration that will justify a cost-shifting order, a statutory right must be involved that invokes "substantive and procedural rights not just for the benefit of individuals but also for public purposes." (*Boghos, supra,* 36 Cal.4th at p. 506.) Only such statutory rights are deemed to be unwaivable under Civil Code sections 1668 and 3513. (*Boghos, supra,* 36 Cal.4th at p. 506; *Armendariz, supra,* 24 Ca.4th at pp. 100–101.)[8]

Thus, in *Boghos, supra,* 36 Cal.4th 495, the Supreme Court declined to extend the holding of *Armendariz, supra,* 24 Cal.4th 83, to insurance disputes involving claims for breach of contract or tort (violation of the covenant of good faith and fair dealing).

In *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 98–99 [7 Cal.Rptr.3d 267] (*Gutierrez*), the Court of Appeal analyzed the fee-shifting approach of *Armendariz, supra,* 24 Cal.4th 83, in the consumer litigation factual context. The court adopted a case-by-case approach for the determination of when cost shifting should be ordered, and held that plaintiffs suing under certain consumer protection statutes (i.e., the Consumers Legal Remedies Act, Civ. Code, § 1750 et seq.; the Vehicle Licensing Act, Civ. Code, § 2985.7 et seq.) "may resist enforcement of an arbitration agreement that imposes unaffordable fees." (*Gutierrez, supra,* at pp. 86–87, 98–99.) Such plaintiffs may pursue a theory that the fees provision of a mandatory arbitration agreement is unconscionable (substantively) if it requires the payment of fees to initiate the process that are unaffordable to them: "Such an agreement also undermines public policy where a consumer relies on unwaivable public rights, by effectively barring the consumer from any forum to vindicate those rights. It is a private agreement in contravention of a public

---

[8] The statutes referenced in *Boghos, supra,* 36 Cal.4th 495 on this point include: "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." (Civ. Code, § 1668.) Further: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." (Civ. Code, § 3513.)

right, an illegal contract [citation], and courts will enforce a contract containing illegal provisions only so long as the unlawful provisions may be severed [citation]." (*Gutierrez, supra,* 114 Cal.App.4th at pp. 98–99.)

In *Gutierrez,* the Court of Appeal ordered that the fee-shifting issue be returned to the trial court for it to hear the matter and exercise its discretion to determine whether it should sever the costs provision in the arbitration clause that required those plaintiffs to post an administrative fee at the outset of the arbitration proceedings. (*Gutierrez, supra,* 114 Cal.App.4th at pp. 86–87, 98–100.) The trial court's determination in this regard will serve as a limitation on the arbitrator's discretion to allocate fees in the normal course of the arbitration proceedings. (*Id.* at pp. 99–100.)

In our case, franchisees are asserting certain common law claims, including damages for breach of contract, interference with contractual rights and prospective economic advantage, and defamation. According to the Supreme Court opinion in *Boghos, supra,* 36 Cal.4th 495, there can be no fee-shifting rule applicable to arbitration of those types of claims, because it would be contrary to section 1284.2. (36 Cal.4th at pp. 505–508.)

However, franchisees are also asserting that MBE violated numerous statutory provisions, including the Franchise Investment Law (Corp. Code, § 31000 et seq.); the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.), the Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.); and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). They are seeking relief including compensatory and punitive damages, injunctive relief regarding unfair trade practices, and statutory relief for restitution, disgorgement of illegal gains, and statutory penalties under the unfair competition law. These statutory claims affect the public interest and appear to fall all or in part within the rules of *Armendariz, supra,* 24 Cal.4th 83 and *Boghos, supra,* 36 Cal.4th 495.

According to AAA Commercial Arbitration Rules, R-43, Scope of Award, as relevant here:

"(b) In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

"(c) In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-49, R-50, and R-51. The arbitrator may apportion such fees, expenses, and compensation among the

parties in such amounts as the arbitrator determines is appropriate. . . ." (<http://www.adr.org> [as of Sept. 16, 2005].)

Ultimately, under this rule, the arbitrator will be able to apportion fees and costs. However, at this point in the proceedings, franchisees have made a prima facie showing that some of their statutory claims are the type which should be entitled to an advance fee allocation ruling, before the arbitration proceedings take place, to the extent that fee allocation is necessary to enable those statutory rights to be vindicated. We believe that the franchise factual context is sufficiently similar to mandatory employee/employer arbitration, or consumer arbitration, to allow these principles to be applied in this case. (See *Postal Instant Press, Inc. v. Sealy, supra,* 43 Cal.App.4th 1704, 1716–1718.) However, that determination cannot be made as a matter of law on this record at this point, and it would be premature at this point for us to attempt to predict the success or failure of these various statutory claims in arbitration, or to evaluate the financial capabilities of the franchisees.

The trial court order delegating the entire issue of costs allocation to the arbitrator did not comply with these standards set out by case law. (See *Gutierrez, supra,* 114 Cal.App.4th at pp. 86–87, 98–100.) The trial court must accordingly conduct further appropriate proceedings regarding the requests for fee shifting with respect to determining what appropriate fee allocation orders must be made, if any, to enable the franchisees to go forward in arbitration to vindicate any unwaivable statutory claims that affect the public interest and therefore are not personal to the franchisees.

## DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its orders (1) denying consolidation, (2) imposing a stay order regarding the mediation petitioners, and (3) delegating the entire issue of costs allocation to the arbitrators.

The superior court is directed to enter new and different orders (1) striking as unconscionable those provisions of the subject franchise agreements' arbitration clauses (a) that prohibit representative or class actions from being handled in the arbitration forum and (b) that limit the arbitrators from granting otherwise authorized relief under statute; (2) granting the motion to consolidate; (3) lifting the stay order regarding IAMCO and the mediation petitioners; and (4) providing for appropriate further proceedings regarding the requests for fee shifting with respect to determining what appropriate fee allocation orders must be made, if any, to enable the franchisees to go forward in arbitration on any unwaivable statutory claims.

In all other respects the petition is denied. Petitioners shall recover their costs in this writ proceeding.

McConnell, P. J., and Aaron, J., concurred.